## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

PATRICK DARNELL PHILLIPS,      )
                               )
       **Petitioner,**          )
                               )
v.                              )        **Case No. CIV-12-735-HE**
                               )
JUSTIN JONES,            )
                               )
       **Respondent.**        )

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner appearing pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2254. United States District Judge Joe Heaton referred the matter for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C), and it is now before the undersigned Magistrate Judge. Petitioner filed a petition, Doc. 1, and a brief in support, Doc. 3. Respondent filed a response, Doc. 15, together with the relevant state court trial transcript ("TR") and the original record ("OR"). Petitioner replied, Doc. 19, and the matter is now at issue. For the reasons discussed below, the undersigned recommends denying habeas relief.

## I.    Introduction.

Two-year old A.R. died while in Petitioner's care and the State of Oklahoma charged Petitioner with first-degree murder. He was convicted and now seeks a writ of habeas corpus.

## II. Petitioner's claims.

Petitioner raises eight claims for relief, which the undersigned has elected to address in the following order.

Petitioner alleges:

(1) insufficient evidence that Petitioner inflicted the child's fatal injuries;

(2) that trial evidentiary errors separately or cumulatively rendered his trial fundamentally unfair;

(3) prosecutorial misconduct through misstating the evidence and showing personal bias;

(4) that the trial court failed to sua sponte instruct on lesser-included offenses;

(5) a Confrontation Clause violation;

(6) that trial counsel was constitutionally ineffective;

(7) that the Oklahoma Court of Criminal Appeals' ("OCCA") interpretation of Oklahoma's child abuse statute is unconstitutional; and

(8) that cumulative error rendered his trial unfair.

Doc. 1, at 5-8; Doc. 3, at 1-28.[1]

---

[1] Citation to page numbers refers to the Court's CM/ECF pagination.

## III. Standard of review for habeas relief.

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1096 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted."). A petitioner is entitled to federal habeas relief only if that merits-based adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, 28 U.S.C. § 2254(d). This standard "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington*, 131 S. Ct. at 786.

This Court first determines "whether the principle of federal law on which the petitioner's claim is based was clearly established by the Supreme Court at the time of the state court judgment." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006); *see also Hooks v. Workman*, 689 F.3d 1148, 1163 (10th Cir. 2012). Clearly established law consists of Supreme Court holdings in cases where the facts are similar to the facts in the petitioner's case. *House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). "The absence of clearly established federal law is dispositive under § 2254(d)(1)." *Id.* at 1018. So, only if this Court answers "affirmatively the threshold question as to the existence of clearly established federal law, may it inquire whether the state court decision is either contrary to or an unreasonable application of such law." *Id.*

If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *Bland*, 459 F.3d at 1009. "A decision is 'contrary to' clearly established federal law . . . if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts . . . materially indistinguishable from a decision of [the Supreme Court] and nevertheless

arrives at a result different from the result reached by the Supreme Court."
*Id.* (quotations omitted) (alterations in original). "A state court decision
involves an 'unreasonable application' of federal law if the state court
identifies the correct governing legal principle from [Supreme Court]
decisions but unreasonably applies that principle to the facts of the prisoner's
case." *Id.* (quotation omitted) (alteration in original). Thus, "[a]s a condition
for obtaining federal habeas relief, . . . a state prisoner must show that the
state court's ruling on the claim being presented in federal court was so
lacking in justification that there was an error well understood and
comprehended in existing law beyond any possibility for fairminded
disagreement." *Harrington*, 131 S. Ct. at 786-87.

Throughout the analysis, the Court must presume the state court's
factual findings are correct unless the petitioner rebuts that presumption by
"clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## IV. Petitioner's claims relying on the Oklahoma constitution.

In part, Petitioner seeks federal habeas relief based on violation of the
Oklahoma constitution. Doc. 3, at 6. But such a violation would not entitle
Petitioner to federal habeas relief. *See Davis v. Reynolds*, 890 F.2d 1105,
1109 n.3 (10th Cir. 1989) ("Alternative state claims, whether grounded in

state statutes or the State Constitution, are not cognizable under 28 U.S.C. § 2254(a)." (citation omitted)). Therefore, the undersigned recommends denial of any claim based on violation of the state constitution.

## V. Petitioner's claims relying on the U.S. Constitution.

After reviewing the following claims based on alleged violations of the federal constitution, the undersigned recommends that the Court deny habeas relief.

### A. Petitioner's claim alleging insufficient evidence.

Petitioner argues that evidence was insufficient to support his conviction. Doc. 3, at 14-16. The OCCA rejected this claim on direct appeal, finding that sufficient evidence existed to convict Petitioner. Doc. 15, Ex. 3, at 2-3. The undersigned finds that this decision was a reasonable application of federal law and recommends that the Court deny Petitioner's claim for habeas relief.

#### 1. Clearly established law.

The United States Supreme Court clearly established the constitutional right to sufficient evidence of guilt in *Jackson v. Virginia*. 443 U.S. 307, 324 (1979); *see Lott v. Trammel*, 705 F.3d 1167, 1219 (10th Cir. 2013) (agreeing that *Jackson* provided "the clearly established law applicable to [an

insufficient evidence] claim"). Under this decision, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original).

Here, the OCCA rejected Petitioner's claim on the merits. Doc. 15, Ex. 3, at 2-3. Thus, the federal district court must address "'whether the OCCA's conclusion'" had "'constituted an unreasonable application of the *Jackson* standard.'" *Diestel v. Hines*, 506 F.3d 1249, 1267 (10th Cir. 2007) (citation omitted). On this question, the state court obtains additional deference. *See id.* AEDPA "'adds an additional degree of deference to state courts' resolution of sufficiency of the evidence questions.'" (citation omitted)). That the state court did not cite *Jackson* is irrelevant to the equation. *See Black v. Workman*, 682 F.3d 880, 892 (10th Cir. 2012) ("It is not necessary that the state-court decision cite applicable Supreme Court decisions. 'Indeed, it does not even require awareness of Supreme Court cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.'" (citation and internal brackets omitted)); *see also Pillars v. Palmer*, No. 2:10-CV-13105, 2013 WL 3732872, at *5 (E.D. Mich. July 15, 2013) (unpublished op.) (applying *Johnson* and concluding that where petitioner raised a federal

constitutional claim, the state court cited cases that applied federal constitutional law, and petitioner did not seek rehearing alleging the failure to adjudicate a federal constitutional claim, petitioner had "not overcome the presumption that both portions of his [federal constitutional claim] were adjudicated on the merits").

### 2.    Analysis.

Under *Jackson*, the standard for evidence sufficiency "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."   443 U.S. at 324 n.16.   Therefore, the Court must consider Petitioner's arguments in that light.

Under Oklahoma law, to convict Petitioner of first degree child abuse murder, the State had to prove:

(1)    the death of a child under eighteen years of age;

(2)    which resulted from the willful or malicious injuring or use of unreasonable force;

(3)    by Petitioner.

*See* Okla. Stat. tit. 21, § 701.7(C); OUJI-CR 4-65A.

Petitioner does not dispute that the evidence was sufficient on the first two elements.   Instead, he challenges only the third element, arguing that the

evidence was insufficient to prove that *he* inflicted the fatal injuries. Doc. 1, at 5; Doc. 3, at 14-15.

As noted above, the question for this Court is not whether there was sufficient evidence to convict Petitioner. Instead, the question is whether the OCCA unreasonably applied *Jackson* when *it* concluded that any rational trier of fact could find Petitioner guilty beyond a reasonable doubt. In light of the prosecution's evidence, the undersigned cannot find an unreasonable application of *Jackson*.

For example, the State presented evidence that massive blunt force trauma to the head killed A.R. and that the child was covered in bruises and contusions and showed strangulation signs. TR vol. 3, at 183; *id.* vol. 4, at 34 (evidence that massive trauma caused A.R.'s death); *id.* vol. 3, at 153-54, 175; *id.* vol. 4, at 13-15 (evidence involving bruising); *id.* vol. 3, at 177, 179 (evidence involving strangulation). The State then established that A.R. had been behaving normally and seemed "fine" all during the day, but then stopped breathing when he was alone with Petitioner. *Id.* vol. 3 at 130, 205; *id.* vol. 4, at 80; *id.* vol. 5, at 31 (evidence that A.R. seemed fine); *id.* vol. 3, at 93, 129-31 (evidence regarding when A.R. stopped breathing). Multiple physicians testified that A.R. would have exhibited symptoms very shortly

after the infliction of trauma. *Id.* at 187; *id.* vol. 4, at 33-35, 118-19; *id.* vol. 6, at 35.

The State also offered considerable evidence intended to discredit Petitioner's version of the events and case theory. For example, although Petitioner kept changing his version of events, his overarching story was that A.R. had taken one or two falls from either the couch or bed. *Id.* vol. 3, at 60, 71, 74, 92, 104, 123, 130-31, 204. But Dr. John Ronck testified that A.R. had too many bruises to count and that one or two short falls would not account for all the physical injuries. *Id.* at 153-55. Another treating physician, Dr. Andrew Gormley, testified that A.R.'s injuries were inconsistent with Petitioner's story. *Id.* at 185. In fact, Dr. Gormley stated that it would be "horribly, horribly uncommon" to see massive brain injury from a minor fall. *Id.* at 200. Dr. Eric Duval, who performed the child's autopsy, also testified that such a massive head injury would be "very, very uncommon" in a short distance fall, and stated that he believed the injuries were inconsistent with a fall from a bed. *Id.* vol. 4, at 46-47.

The State's expert witness, Dr. Robert Block, testified that the overwhelming scientific evidence showed that short distance falls did not cause significant brain injury. *Id.* at 108, 110. Dr. Block noted that in his

own personal treatment of thousands of children, he had never seen significant brain trauma from a short fall. *Id.* at 110-11.

At trial, Petitioner's theory was that A.R. had experienced prior head trauma and that Ms. Ratzlaff, the biological mother, had subjected A.R. to continuous physical abuse. According to Petitioner, the short distance fall was simply the "straw that broke the camel's back." *Id.* vol. 3, at 29-31; *id.* vol. 6, at 92. However, Dr. Duval testified that he found no evidence of "mature" brain injuries during the child's autopsy, and Dr. Block stated that it was his professional opinion that accumulated abuse did not cause A.R.'s injuries; instead one "massive injury" caused the death. *Id.* vol. 4, at 33-34; *see also id.* vol. 6, at 24-30 (Dr. Duval's testimony); *id.* vol. 4, at 119-20 (Dr. Block's testimony).

In response to the State's evidence, Petitioner presented expert testimony from Dr. James Ritze. Dr. Ritze opined that some small-distance falls could be "catastrophic"; however, on cross-examination the physician agreed that one or two falls off of a couch or bed would not have caused significant brain trauma. *Id.* vol. 5, at 43, 59. Dr. Ritz opined that a prior injury could have been the root cause for the significant brain trauma, and testified that the dark-red blood discovered in A.R.'s brain during the autopsy

was indicative of a prior injury. *Id.* at 49. Based on that, Dr. Ritze said that it was impossible to know whether the fatal injuries had been inflicted during the time Petitioner was alone with A.R. *Id.* at 53-54. However, on cross-examination, the physician admitted that he had no training in pathology. *Id.* at 56.

In response, the State recalled pathologist Dr. Duval, who noted his disagreement with Dr. Ritze's conclusions regarding the injuries' ages. *Id.* vol. 6, at 24-26. The State also elicited testimony from Dr. Michael O'Quinn, the physician who examined the child after one of the alleged abusive incidents involving the mother. *Id.* at 31-33. Dr. O'Quinn testified that A.R. had not suffered any head trauma during that alleged incident, and noted that he had never seen catastrophic brain injury from a minor fall. *Id.* at 33-35.

In addition to the medical evidence, the prosecution also elicited testimony that Petitioner:

(1) waited 15 minutes after the child stopped breathing to call 911, *id.* vol. 3, at 47-48;

(2) prematurely ended the call with the 911 operator and did not call back, *id.* at 34, 36-37;

(3) remained on his cell phone and kept leaving the room rather than answer vital questions from the first emergency responders, *id.* at 47-48;

(4)     claimed not to have noticed a very large and obvious bruise under the child's chin, *id.* at 131; and

(5)     seemed only concerned with convincing people that he did not hurt A.R., and thought he would be blamed because he "tried to make [the child] act grown." *Id.* at 129; *id.* vol. 4, at 54, 58, 75-76, 100.

Particularly discrediting to Petitioner, the State presented evidence that he had repeatedly changed his version of events. For example, testimony revealed that Petitioner told the first medical responders that A.R. had been eating and watching television when he fell off the couch and hit his head. *Id.* vol. 3, at 60, 71. However, Petitioner told police investigators at the scene that the child fell off the bed once, and that Petitioner had then attempted CPR. *Id.* at 92, 104, 106. When police at the hospital interviewed Petitioner, he elaborated and said that A.R. fell of the bed once and "seemed fine" and then fell off the bed a second time and stopped breathing. *Id.* at 130-31. Petitioner stated that he did *not* perform CPR because he could not get the child's mouth open. *Id.* at 131. Then, during an interview with a hospital social worker, Petitioner initially said that he gave the child "mouth to mouth" but then later stated that he could not perform CPR because he could not get A.R.'s mouth open. *Id.* at 204, 206-07. Next, Petitioner told a church member that A.R. had been asleep and when he went to check on the child, he

found that A.R. was not breathing. *Id.* vol. 4, at 99. Petitioner also told that witness, but no one else, that his brother had been at the house during this time but had left before the ambulance arrived. *Id.* at 99-100. Finally, Petitioner told a county jail inmate that A.R. had fallen down the stairs at his grandparents' house the night before he died. *Id.* at 90. Petitioner told the same inmate that A.R. fell off the bed, then later stated that the child fell off the couch. *Id.*

In light of this evidence, any rational trier of fact could have found beyond a reasonable doubt that Petitioner used unreasonable force against A.R., resulting in the child's death. Therefore, the undersigned concludes that the OCCA reasonably applied *Jackson* when it decided that the evidence was sufficient to prove Petitioner's guilt.

**B.     Petitioner's claim that evidentiary errors individually or in combination denied him a fundamentally fair trial.**

According to Petitioner, four evidentiary errors deprived him of a fair trial. Specifically, Petitioner points to the improper admission of: (1) a "live victim" photograph; (2) cumulative medical evidence; (3) irrelevant evidence relating to a scar on the victim's head; and, (4) the autopsy photograph showing A.R.'s brain. Doc. 1, at 6; Doc. 3, at 17, 28. The undersigned liberally construes the petition to allege that if these evidentiary errors do not

require relief individually, then they should be aggregated and considered for their cumulative effect. *See* Doc. 3, at 17-21.

### 1. The individual evidentiary errors.

Generally, Petitioner's challenges to the trial court's evidentiary decisions raise only state law questions. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Hooks*, 689 F.3d at 1180 ("Of course, federal habeas relief is not available to correct state law evidentiary errors." (quotations and citation omitted)). Thus, to warrant habeas relief, Petitioner must establish that the alleged errors were so grossly prejudicial that they fatally infected the trial and denied fundamental fairness. *See Hooks*, 689 F.3d at 1180 ("Thus, Mr. Hooks is entitled to habeas relief only if an alleged state-law error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." (quotations and citation omitted)).

The OCCA reviewed each alleged evidentiary error on direct appeal. Doc. 15, Ex. 3, at 4-6. And while the state appellate court primarily cited Oklahoma law, the undersigned presumes that the OCCA adjudicated the federal claims on the merits. This presumption is justified because "it is not

the uniform practice of busy state courts to discuss separately every single claim to which a defendant makes even a passing reference." *Johnson*, 133 S. Ct. at 1094; *Harrington*, 121 S. Ct. at 784-85. Thus, when a state court rejects a federal claim without expressly addressing that claim, there arises a rebuttable presumption that the federal claim was adjudicated on the merits. *Johnson*, 133 S. Ct. at 1096 ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted.").

The undersigned concludes that the OCCA did in fact adjudicate Petitioner's federal claims. First, Petitioner specifically raised the federal claims in his direct appeal. Doc. 15, Ex. 1, at 32, 39. Second, the OCCA acknowledged that Petitioner was invoking the federal constitution. *Id.* Ex. 3, at 1. Third, Petitioner did not thereafter challenge the OCCA's ruling for failing to adjudicate the federal claims. And fourth, Petitioner points to no circumstances suggesting that the OCCA did not intend to rule on the federal aspect of his arguments. These reasons all support the application of AEDPA deference. *See Johnson*, 133 S. Ct. at 1098-99; *see also Pillars,* 2013 WL 3732872, at *5.

### a.　The admission of a "live-victim" photograph.

The State produced A.R.'s picture, taken while the child was living, and asked a witness whether it accurately depicted how A.R. had once appeared. TR vol. 4, at 81.  In the picture, the child is smiling and riding a bicycle.  *Id.* ex. vol., State's Ex. 1.  Petitioner alleges that the prejudicial effect of this "live victim" photograph outweighed any probative value and it should have been excluded.  Doc. 3, at 17-19.

The OCCA disagreed, citing Okla. Stat. tit. 12, § 2403.  Doc. 15, Ex. 3, at 4 & n.7.  That statute reads:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise.  However, in a prosecution for any criminal homicide, an appropriate photograph of the victim while alive shall be admissible evidence when offered by the district attorney to show the general appearance and condition of the victim while alive.

Okla. Stat. tit. 12, § 2403.

Under that statute, A.R.'s picture was properly admitted under Oklahoma law, and the State referred to the photograph only one time.  *See* TR vol. 4, at 81.  Consequently, the undersigned finds that the OCCA reasonably applied federal law in determining that the admission of the "live-victim" photograph did not deprive Petitioner of a fundamentally fair trial.

17

*See Roberts v. Miller*, No. CIV-09-717-R, 2010 WL 3212730, at *17 (W.D. Okla. July 19, 2010) (unpublished report and recommendation) (recommending a finding that admission of a photograph taken while the victim was still alive did not render the trial fundamentally unfair), *adopted*, 2010 WL 3212729 (W.D. Okla. Aug. 11, 2010) (unpublished district court order).

### b.  Admission of cumulative medical testimony.

Petitioner also alleges that cumulative medical testimony created a due process violation.  That is, Petitioner argues that when Dr. Block testified, "no fewer than three doctors had already testified extensively to [A.R.'s] injuries," and when Dr. O'Quinn testified, "the State was in the rebuttal phase and five doctors had testified about short falls and head trauma."  Doc. 3, at 19-20.  Thus, Petitioner believes that Dr. Block's testimony should have been excluded in its entirety, and Dr. O'Quinn's testimony should have been limited to "the scope of rebuttal evidence."  *Id.*  On direct appeal, the OCCA rejected the claim concluding that the trial court acted within its discretion when it allowed the State's child abuse forensic expert and a rebuttal witness to testify.  Doc. 15, Ex. 3, at 4-5 & n.8.  The undersigned finds that this was a reasonable application of Supreme Court law.

For example, each of Drs. Ronck's, Gormley's, and Duval's testimony held importance because these doctors examined A.R. either before or after the child's death. However, none of these physicians testified as experts in child abuse and neglect. Thus, the State called Dr. Block to explain the significance of the child's injuries from that unique perspective. The physician was qualified to testify on the matter, and was subject to cross-examination. TR vol. 4, at 104-107, 121-25. For these reasons, it was reasonable for the OCCA to find a lack of fundamental unfairness in this testimony. *See Fox v. Ward*, 200 F.3d 1286, 1297 (10th Cir. 2000) (finding no fundamental unfairness in the admission of testimonial evidence where each witness was "qualified to testify" and was subject to cross-examination); *see also Torres v. Roberts*, 253 F. App'x 783, 790 (10th Cir. 2007) (applying *Fox v. Ward* to petitioner's claim that the "sheer number" of expert witnesses rendered his trial fundamentally unfair and finding that because each witness was "adequately qualified to testify" and "subject to cross-examination," the admission of six expert witnesses did not violate due process).

The same is true for Dr. O'Quinn's testimony. Dr. O'Quinn examined A.R. when the child was an infant, following an allegation of abuse at the

mother's hands, and found no evidence of abuse. TR vol. 6, at 32-33. The State called Dr. O'Quinn to rebut the defense theory that the child had possibly sustained brain injury during that incident. During that questioning, the physician stated that he did not believe that cumulative injuries could result in a catastrophic injury and that he had personally never seen a significant brain injury result from a short-distance fall. *Id.* vol. 6, at 34.

The undersigned finds that the OCCA's conclusion that this testimony served a probative purpose was not an unreasonable application of clearly established federal law. The gravamen of Petitioner's defense theory was that A.R. died from a short-fall because he had prior brain injuries. Dr. O'Quinn was the physician that examined A.R. following one of those alleged injuries, so it was reasonable for him to give an opinion regarding whether a prior injury could have contributed to A.R.'s death. Finally, the doctor was subject to cross-examination. *Id.* vol. 6, at 37-40; *see also Fox*, 200 F.3d at 1297.

### c.     Admission of a photograph of the victim's scar.

The State admitted a photograph depicting a scar over A.R.'s eye and elicited testimony that Petitioner had told two different stories regarding how

the child got the scar. TR vol. 3, at 140; *id.* ex. vol., State's Ex. 31 (admission of photograph); *id.* vol. 4, at 90 (testimony). On direct appeal, the OCCA agreed that this evidence was irrelevant. Doc. 15, Ex. 3, at 4-5. However, the OCCA reasonably denied any relief. *Id.*

The undersigned agrees that the introduction of this evidence did not render Petitioner's trial fundamentally unfair. For instance, the State never presented any evidence suggesting that Petitioner inflicted the scar-producing injury. Indeed, the prosecution did not even attempt to age the scar, and Petitioner and A.R.'s mother had only been dating for about 8-9 months prior to the child's death. TR vol. 4, at 73. Combined with Petitioner's own evidence that Ms. Ratzlaff had physically abused A.R. in the past, the jury could have as easily speculated that the mother had caused the scar. To that end, while the evidence might have been irrelevant, the OCCA could reasonably conclude that it did not fatally infect Petitioner's trial. *Harrington*, 131 S. Ct. at 786-87 ("To obtain relief, 'a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"); *see also Pillars*, 2013 WL 3l732872, at *5.

### d.    Admission of a post-autopsy brain photograph.

Finally, Petitioner complains that the trial court improperly admitted an autopsy photograph of A.R.'s bloody brain. Doc. 3, at 20-21. The OCCA agreed that the photograph's admission was error, but held that the error "[did] not require relief." Doc. 15, Ex. 3, at 5. Again, the undersigned presumes that in so holding the OCCA was also rejecting Petitioner's allegation that the photograph created a fundamentally unfair trial. That conclusion was reasonable.

It is undisputed that A.R. died from abuse. Further, there is substantial evidence that Petitioner was responsible for that fatal abuse. Thus, while the photograph may have been irrelevant, the OCCA could reasonably conclude that it did not render Petitioner's trial fundamentally unfair. *See Kibbe v. Williams*, 392 F. App'x 648, 651 (10th Cir. 2010) (rejecting petitioner's claim that introduction of victim's autopsy photograph violated due process because the allegation did not "approach the high standard for finding constitutional error").

### 2.    The cumulative effect of the evidentiary errors.

The undersigned finds that Petitioner is likewise not entitled to habeas relief based on the alleged cumulative effect of the evidentiary errors. The

OCCA rejected such a claim on direct appeal, Doc. 15, Ex. 3, at 6 & n.18, and that decision was reasonable.

### a.      Clearly established law.

The Tenth Circuit has recognized a circuit split regarding whether a cumulative error analysis is clearly established federal law, and noted that the question "remains an open issue in this circuit." *Hooks*, 689 F.3d at 1194, n.24. However, the circuit also noted that it had "long conducted cumulative-error analyses in [its] review of federal habeas claims." *Id*; *see also Grant v. Trammell*, ___ F.3d ___, No. 11-5001, 2013 WL 4105939 at *15 (10th Cir. Aug. 15, 2013) (addressing cumulative error claim). With that posture, the Court may find that the OCCA's decision on this issue was reasonable.

"In the federal habeas context, the only otherwise harmless errors that can be aggregated are federal constitutional errors, and such errors will suffice to permit relief under cumulative error doctrine only when the constitutional errors committed in the state court trial so fatally infected the trial that they violated the trial's fundamental fairness." *Littlejohn v. Trammell*, 704 F.3d 817, 868 (10th Cir. 2012) (citations and internal quotations omitted); *see also Ochoa v. Workman*, 669 F.3d 1130, 1146 (10th Cir. 2012) ("In the federal habeas context, the only otherwise harmless errors

that can be aggregated are federal constitutional errors . . . .").  As that language implies, this analysis "does not apply to the cumulative effect of non-errors."  *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998).

### b.    Analysis.

As discussed above, the OCCA reasonably concluded that while the trial court committed two evidentiary errors, neither error resulted in a fundamentally unfair trial.  That is, neither trial error constituted a *constitutional* error.  Thus, without any constitutional errors to aggregate, Petitioner cannot successfully argue that the OCCA unreasonably applied federal law in rejecting his cumulative error claim.

### 3.    Summary.

The undersigned finds that the OCCA reasonably applied the relevant federal law and the Court should therefore deny habeas relief on Petitioner's allegation that the evidentiary errors, either individually or cumulatively, violated due process.

## C.    Petitioner's prosecutorial misconduct claim.

Petitioner alleges misconduct in the prosecutor's closing argument resulting in a fundamentally unfair trial.  Doc. 1, at 7; Doc. 3, at 22-23. Specifically, the prosecutor allegedly:  (1) misstated the evidence in arguing that Petitioner strangled A.R.; and (2) showed personal bias when

24

commenting that the State had picked up the "torch of truth."  Doc. 3, at 22-23.

### 1.  Clearly established law.

The Supreme Court has clearly established that a defendant is entitled to fundamental fairness in the prosecutor's conduct at trial.  *See Greer v. Miller*, 483 U.S. 756, 765 (1987) ("This Court has recognized that prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" (citation omitted)).  The ultimate consideration is "'the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly.'"  *Duckett v. Mullin*, 306 F.3d 982, 989 (10th Cir. 2002) (citation omitted)).

### 2.  Alleged misstatement of the evidence.

On direct appeal, the OCCA rejected Petitioner's suggestion that the prosecutor misstated the evidence.  The appellate court held that "the prosecutor properly argued from evidence suggesting Phillips caused the victim's death by strangling or choking or hitting him."  Doc. 15, Ex. 3, at 6, n.15.  The undersigned finds that the OCCA did not unreasonably apply clearly established federal law in so concluding.

The evidence at trial established that A.R. showed physical signs that he had been strangled, including red marks and bruising around his neck and trapped air under his skin. TR vol. 3, at 177, 179; *id.* vol. 4, 15; *id.* ex. vol., State's Exs. 28-29. Though Petitioner told an investigator that the child had accidentally wrapped a radio antenna around his neck, *id.* vol. 3, at 131, the State's argument that Petitioner strangled A.R. was a reasonable inference based on the evidence. Therefore, the OCCA could have reasonably concluded that the prosecutor's comment on the evidence was valid. *See Gaines v. Workman*, 326 F. App'x 449, 454 (10th Cir. 2009) (holding that the OCCA had reasonably rejected a prosecutorial misconduct claim when the State's closing argument had been based "on reasonable inferences from the evidence").

### 3. Alleged personal bias.

The OCCA also rejected Petitioner's second claim. The court held that while the State's comments "were not improper personal opinions of Phillips's guilt, [they] were improper pleas for justice, against which we have often cautioned prosecutors." Doc. 15, Ex. 3, at 8. Nevertheless, the OCCA concluded that Petitioner had failed "to show that these comments constituted a miscarriage of justice or substantially violated his . . .

constitutional rights." *Id*. Again, the undersigned finds that the OCCA did not unreasonably apply Supreme Court law.

At the conclusion of closing argument, the State commented:

> Once the Defendant abused [A.R.] to the point of no return the constant steady march toward justice began. The police started that march toward justice over two years ago.

> After they did their work they passed this torch of truth on to the District Attorney's Office where Mr. Retherford and I have done our best to walk with it as far as we can go.

> However, our system doesn't allow us, as prosecutors, to carry that torch of truth over the line. We get to walk up to that line and then we pass that torch of truth on to you.

> We do that in this case with all the hope and all the confidence that you'll meet the Defendant's brutality with justice.

TR vol. 6, at 109.

According to Petitioner, this speech showed the prosecutor's personal bias. The OCCA concluded that it did not, but rather invoked an improper plea for justice. Viewed in either manner, Petitioner's claim for habeas relief must fail.

For example, even if the State made a personal comment on Petitioner's guilt, the statement, though improper, was too innocuous to render the trial fundamentally unfair. That is, the prosecutor did not insinuate that he had any personal knowledge unknown to the jury. *See United States v. Young*,

470 U.S. 1, 19 (1985) (holding that it is "improper for [a] prosecutor to express [a] personal opinion" regarding guilt, but concluding that such comments did not render the trial fundamentally unfair when the remarks could not be read as implying any access to evidence outside the record). And, the State's comment was "not relevant to any of the key factual issues at trial and therefore . . . not prejudicial." *Hopkinson v. Shillinger*, 866 F.2d 1185, 1210 (10th Cir. 1989), *recognition of overruling on other grounds*, *Davis v. Maynard*, 911 F.2d 415, 417 (10th Cir. 1990).

Viewing the statement as an improper plea for justice, the undersigned likewise fails to find any unreasonableness in the OCCA's decision. The jury was specifically instructed to consider only the evidence when reaching a verdict and not to allow "sympathy, sentiment or prejudice [to] enter into . . . [the] deliberations." OR 253-54, 272. And, the jury is presumed to have followed that instruction. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions." (citation omitted)). In this light, and when considered with the sufficient evidence of guilt, the undersigned cannot say that the OCCA unreasonably applied clearly established federal law when it rejected Petitioner's prosecutorial misconduct claim on this ground. *See, e.g., Le v. Mullin*, 311 F.3d 1002, 1022 (10th Cir. 2002) (finding

that in light of the evidence of guilt and the jury's instructions, the OCCA did not unreasonably apply federal law in ruling that prosecutor's improper comments regarding justice "did not render the trial fundamentally unfair").

### 4. Summary.

The OCCA rejected Petitioner's prosecutorial misconduct allegations on the merits, and the undersigned finds that the appellate court did not unreasonably apply federal law in so doing. Accordingly, the undersigned recommends denial of habeas relief on this ground.

### D. The trial court's failure to sua sponte instruct on lesser-included offenses.

Petitioner additionally seeks habeas relief based on the trial court's failure to sua sponte instruct on lesser-included offenses. Doc. 1, at 6; Doc. 3, at 11-13. On direct appeal, the OCCA held that "as no evidence supported . . . lesser-included offense instruction[s] . . ., the trial court did not err in failing *sua sponte* to give [those] instructions." Doc. 15, Ex. 3, at 7 & n.19.

The threshold question is whether the OCCA's finding was contrary to, or an unreasonable application of, clearly established Supreme Court precedent. But in the absence of Supreme Court law, the OCCA's finding cannot be either contrary or unreasonable — the lack of Supreme Court law is

fatal to a petitioner's request for habeas relief.  *See House*, 527 F.3d at 1017 (citation omitted).  That circumstance is present here.

The Supreme Court has never recognized a federal constitutional right to instructions on lesser-included offenses in a non-capital case.  *See Tiger v. Workman*, 445 F.3d 1265, 1268 (10th Cir. 2006); *see also Hall v. Ezell*, 499 F. App'x 769, 771 (10th Cir. 2012) ("The Supreme Court has never recognized a federal constitutional right to a lesser-included offense instruction in non-capital cases, and neither has this court." (citation and internal brackets omitted)).  As a result, the trial court's failure to sua sponte instruct on lesser-included offenses cannot justify habeas relief.  *See Tiger*, 445 F.3d at 1268 ("Our precedents establish a rule of 'automatic non-reviewability' for claims based on a state court's failure, in a non-capital case, to give a lesser-included offense instruction." (citation omitted)); *Hall*, 499 F. App'x at 771 ("[Petitioner] raises no colorable basis for habeas relief based on the failure to include a lesser-included offense instruction.").

### E. Petitioner's claim involving a Confrontation Clause violation.

Petitioner alleges that hearsay testimony admitted at trial violated the Confrontation Clause.  Doc. 1, at 7; Doc. 3, at 24-25.  Petitioner specifically refers to Officer Shirley Blodgett's testimony that Ms. Ratzlaff had said that

she could hear A.R. laughing and playing when Petitioner called her to report the child's first fall. Doc. 3, at 24. Without mentioning the Confrontation Clause, the OCCA held that the admission of such evidence "did not prejudice Phillips" and thus denied relief. Doc. 15, Ex. 3, at 6. However, Petitioner raised a Confrontation Clause claim, Doc. 15, Ex. 1, at 40-42, the OCCA acknowledged such a claim, *id.* Ex. 3, at 2, and Petitioner did not thereafter petition for rehearing alleging that the state court failed to adjudicate the Confrontation Clause claim on the merits. Applying these factors, the undersigned concludes that Petitioner has not rebutted the presumption that the OCCA adjudicated this claim on the merits. *See Johnson*, 133 S. Ct. at 1096; *see also Pillars*, 2013 WL 3732872, at *5.

### 1. Clearly established law.

In *Crawford v. Washington*, 541 U.S. 36, 54 (2004), the Supreme Court held that testimonial hearsay violates a defendant's right to confront and cross-examine under the Confrontation Clause. However, "Confrontation Clause violations are subject to harmless error analysis and thus may be excused depending on the state of the evidence at trial." *Brown v. Uphoff*, 381 F.3d 1219, 1226-27 (10th Cir. 2004) (citation omitted). The constitutional violation would be considered "harmless" if the error lacked a substantial and

injurious effect or influence on the verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993).[2] In this context:

> We consider factors such as the "importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case."

*Littlejohn*, 704 F.3d at 844-45 (citation omitted).

### 2. Analysis.

An Enid police officer interviewed Ms. Ratzlaff so that officers might understand how A.R. received his injuries. TR vol. 3, 126-27. Under the circumstances, Ms. Ratzlaff could have objectively foreseen that her statement might be used in the investigation of a crime and the hearsay statement were likely testimonial in nature. *See United States v. Summers*, 414 F.3d 1287, 1302 (10th Cir. 2005) (holding that a statement is considered "testimonial" under the Confrontation Clause when "a reasonable person in the position of the declarant would objectively foresee that [her] statement

---

[2] The OCCA did not articulate what constitutional standard it applied in finding a lack of prejudice. Regardless, "in a collateral review of a state court's criminal judgment, we apply the 'more forgiving standard' . . . articulated in *Brecht* . . . ." *Lockett v. Trammel*, 711 F.3d 1218, 1232 (10th Cir. 2013).

might be used in the investigation or prosecution of a crime"). Regardless, the undersigned finds that the admission was harmless under *Brecht*.

Several factors support such a finding. For example, Petitioner's own statements corroborate Ms. Ratzlaff's statement that A.R. sounded fine after the first alleged fall. TR vol. 3, at 130, 205; *id.* vol. 4, at 80. Indeed, Petitioner's attorney used the hearsay to Petitioner's advantage in getting Officer Blodgett to admit that Ms. Ratzlaff's and Petitioner's statements were consistent. *Id.* vol. 3, at 145. Further, another witness also testified that A.R. had been acting normally earlier that day, *id.* vol. 5, at 31, and Ms. Ratzlaff's employer testified that the mother's demeanor was "normal" after Petitioner called to report the first alleged fall. *Id.* vol. 4, at 65-66.

Under these circumstances, the Court should regard any possible constitutional violation as harmless.

## F. Petitioner's ineffective assistance of trial counsel claim.

Petitioner also seeks habeas relief on grounds that trial counsel provided ineffective assistance. Doc. 1, at 5; Doc. 3, at 7-10. The OCCA rejected this claim on the merits, Doc. 15, Ex. 3, at 2-4, and undersigned finds that the OCCA's decision was reasonable.

### 1. Clearly established law.

For claims involving ineffective assistance of counsel, the Supreme Court "clearly established" federal law in *Strickland v. Washington,* 466 U.S. 668 (1984). There the Court held that a petitioner must show that the attorney's performance was constitutionally deficient and prejudicial. *Id.* at 690-91. An attorney's performance is only considered "deficient" if it falls "outside the wide range of professionally competent assistance." *Id.* at 690. "[P]rejudice" involves "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Because of *Strickland's* generality, this Court must give the state appeals court considerable latitude in its analysis, or a "doubly deferential judicial review." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). With this latitude, the federal district court assesses the reasonableness of the OCCA's *Strickland* application. *See Harrington*, 131 S. Ct. at 785 (2011).

### 2. Trial counsel's alleged failure to present a "coherent defense."

Petitioner first blames his attorney for failing to present a "coherent defense." Doc. 1, at 5; Doc. 3, at 7-9. According to Petitioner, trial counsel presented "two, mutually exclusive theories of defense:" (1) that a short fall

from the couch or bed could have caused A.R.'s traumatic brain injury; and, (2) the mother's prolonged abuse caused the child's death. Doc. 3, at 8. The OCCA rejected this claim as factually inaccurate, holding:

> We . . . find that . . . counsel did not, as Phillips argues, fail to present a consistent theory of defense . . . .
>
> . . . .
>
> Trial counsel neither advanced nor argued the defense suggested [that the child's traumatic brain injury was caused by a one or two time fall from a bed or couch]. . . . Counsel consistently argued that Phillips did not cause the victim's injuries and argued that [the child's] mother was the most likely culprit. Counsel introduced evidence that the mother abused the victim, and his medical expert testified that the victim's death could be the result of cumulative injury, exacerbated by the falls he took while in Phillip's care.

Doc. 15, Ex. 3, at 3 & n.5.

The undersigned finds that the OCCA's conclusion was reasonable. For instance, defense counsel did ask some medical witnesses whether short distance falls could ever account for traumatic brain injury. TR vol. 3, at 159-60; *id.* vol. 4, at 44; *id.* vol. 5, at 43. But, it is clear that this was not an independent line of defense. Indeed, as discussed above in § V.A.2., the record establishes that the attorney's consistent theory was that A.R. had likely suffered from his mother's physical abuse over a prolonged period, resulting in cumulative injury to the child's brain, and that it was the

cumulative injury which allowed an otherwise insignificant fall to result in traumatic brain injury. Indeed, defense counsel presented this theory in his opening statement, made it clear through his witness cross-examination and witness presentation, and during closing argument. *Id.* vol. 3, at 29-31 (opening statement); *id.* at 161, 198-99; *id.* vol. 4, at 48-49, 124; *id.* vol. 5, at 10-11, 24, 49-54, 64-66; *id.* vol. 6, at 10, 14, 17-18 (witness questioning); *id* at 91-93 (closing argument). Consequently, the OCCA made a reasonable factual determination that trial counsel did not in fact present a defense suggesting that one or two short falls from a couch or bed alone caused A.R.'s traumatic brain injury. And, because trial counsel did not in fact present two, mutually exclusive defenses, the OCCA also reasonably concluded under *Strickland* that counsel's representation did not fall outside the wide range of professionally competent assistance.

### 3. Trial counsel's failure to ask specific questions on cross-examination.

Petitioner further alleges that his attorney failed to: (1) cross-examine the medical witnesses regarding the "time frame of the injuries," and (2) question Dr. Block regarding contradictory or qualifying statements the physician made during a preliminary hearing regarding the difficulty in dating bruises. Doc. 3, at 8-9. Although the OCCA did not expressly address

36

these allegations, the appellate court did find that trial counsel was not constitutionally ineffective. Doc. 15, Ex. 3, at 2-4. Accordingly, the undersigned engages in the rebuttable presumption that the OCCA adjudicated these issues on the merits. *See Johnson*, 133 S. Ct. at 1096 (noting that "it is by no means uncommon for a state court to fail to address separately [every] federal claim" and holding "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits").

According to Petitioner, his trial attorney's failure to ask the relevant questions resulted in an impression that all A.R.'s injuries were "recent" or "fresh." Doc. 3, at 8. But that theory actually corresponds with Petitioner's version of events. That is, Petitioner told investigators that A.R.:

    (1)    fell in the bathtub that same afternoon, sustaining injury, TR vol. 3, at 131, 205;

    (2)    had accidentally wrapped a soft antenna around his neck that very morning, causing injury; *id* at 131; and

    (3)    had sustained the chin bruising when he fell off the bed. *Id*.

Thus, counsel's attempt to date these injuries to an earlier time would have actually discredited Petitioner. The Court engages in a "strong presumption" that counsel acted reasonably when he decided not to contradict his client's

prior statements. *Welch v. Workman*, 639 F.3d 980, 1011 (10th Cir. 2011) (citation omitted). To that end, Petitioner has failed to demonstrate that his trial attorney's conduct was constitutionally deficient or that the OCCA unreasonably applied *Strickland*. *See id.* (holding that the OCCA's conclusion that trial counsel's "strategy to forego" asking certain questions on cross-examination was not unreasonable).

### 4. Trial counsel's alleged failure to "marshal the evidence" in closing argument.

Petitioner also claims that his attorney failed to "marshal the evidence" in closing argument because counsel did not argue that: (1) A.R. was beginning to "suffer neurologic deficits shortly after and possibly before Ms. Ratzlaff left for work," and (2) the State had "presented no evidence to account for [A.R.'s] [normal] behavior prior to being put down for a nap" or "who was with [A.R.] just prior to his nap." Doc. 3, at 9-10. Petitioner states that there is "no reason for defense counsel" not to have made these arguments to the jury. *Id.* at 10. The OCCA rejected this theory on the merits, Doc. 15, Ex. 3, at 5, and the undersigned finds that the appellate court reasonably applied *Strickland* in doing so.

Under the State's theory, Petitioner beat, strangled, and caused blunt force trauma to A.R. while the child remained in his sole care, resulting in the

almost immediate death of an otherwise normal and healthy child. *See* TR vol. 3, at 18, 19-25; *id.* vol. 6, at 52-81. Petitioner has not explained why an attorney, giving professionally competent assistance, would ever want to emphasize that A.R. was acting normally earlier that day, thereby reinforcing the State's theory. And, throughout Petitioner's ever changing version of events, he never once suggested that the child's mother had inflicted significant injury to A.R. just before she left for work. There was no such evidence presented at trial, and in fact, testimony revealed that Ms. Ratzlaff was shocked and immediately devastated upon learning that A.R. had stopped breathing. *Id.* vol. 4, at 66. Again, Petitioner has not explained why a competent attorney would remind the jury that A.R. had been fine until just shortly after the mother left for work – leaving A.R. in Petitioner's care. Consequently, the undersigned finds that the OCCA's conclusion that trial counsel's representation was not constitutionally deficient was not an unreasonable *Strickland* application. *See Welch*, 639 F.3d at 1011.

### 5. Trial counsel's failure to object.

Petitioner further alleges that his trial attorney failed to object to the "prosecutor misstat[ing] the evidence and several pieces of irrelevant testimony and [a] hearsay statement [being] allowed into evidence." Doc. 1,

at 5; Doc. 3, at 10. Petitioner cites to his arguments addressed above in §§ V.B.1.a., V.B.1.c., V.C.2, and V.E.2. Doc. 3, at 10. The OCCA rejected this ineffective assistance of counsel claim, finding that:

> (1)    the attorney did in fact object to the admission of the irrelevant scar photograph;
>
> (2)    no other irrelevant evidence was admitted, thus counsel had no grounds for objection;
>
> (3)    the prosecutor did not misstate the evidence, again derailing the need for objection; and
>
> (4)    the hearsay admission was not prejudicial, so counsel's failure to object was not prejudicial.

Doc. 15, Ex. 3, at 3-4. The undersigned finds that this was a reasonable *Strickland* application.

As the OCCA noted, the two photographs (A.R.'s scar and post-autopsy brain) drew trial counsel's objections. TR vol. 3, at 140-41. And, as discussed above in §§ V.B.1 and V.C.2., (1) no other irrelevant evidence was admitted, and (2) the prosecutor made a fair comment on the evidence when he suggested that Petitioner strangled the child. Thus, having lodged proper objections and/or not having any legitimate objections to make, the trial attorney's conduct could not reasonably be found deficient under *Strickland*.

Finally, as addressed above in § V.E.2., Ms. Ratzlaff's hearsay statement was a harmless Confrontational Clause violation. Accordingly,

there is not a reasonable probability that Petitioner's trial would have had a different outcome if counsel had objected to the hearsay testimony. *See Carr v. Koerner*, 120 F. App'x 772, 776 (10th Cir. 2005) (affirming the rejection of a claim of ineffective assistance of counsel based on the failure to object to the introduction of inadmissible statements where those statements "were not so prejudicial as to change the outcome of the trial").

### 6. Trial counsel's failure to request lesser-included instructions.

Petitioner believes that he was entitled to instructions on lesser-included offenses, and that his attorney was ineffective for failing to request those instructions. Doc. 3, at 10. On direct appeal, the OCCA rejected the claim, finding no evidence to support lesser-included instructions. Doc. 15, Ex. 3, at 3. Because the OCCA's *Strickland* application was not unreasonable, the undersigned finds that Petitioner's claim for relief must fail.

Petitioner argues that the evidence would have supported charges for: (1) second-degree felony murder based on either (a) felony child neglect or (b) misdemeanor omission to provide for a child; or (2) misdemeanor manslaughter with the underlying misdemeanor of omission to provide for a child. Doc. 3, at 11-12.

Oklahoma law only requires instruction on a lesser-included offense when the evidence would rationally allow a jury to "find both that the lesser offense was committed and that the greater offense was not." *Frederick v. Oklahoma*, 37 P.3d 908, 943-44 (Okla. Crim. App. 2001). Thus, even if the trial attorney had requested the relevant instructions, the trial court would have had to determine "whether the evidence might allow a jury to acquit the defendant of the greater offense and convict him of the lesser." *Williams v. Oklahoma*, 22 P.3d 702, 711 (Okla. Crim. App. 2001). The undersigned finds that the OCCA reasonably concluded that the evidence did not support the giving of the lesser-included offense instructions and thus the trial attorney was not deficient in failing to request the instructions.

### a. Second-degree murder based on felony child neglect.

In part, Petitioner believes his attorney should have requested an instruction on second-degree murder based on felony neglect.

In Oklahoma, second-degree felony murder occurs in relevant part when the commission of an underlying felony causes a death. *See* Okla. Stat. tit. 21, § 701.8(2); OUJI-CR 4-92. Petitioner argues that the jury could have found that he was engaged in felony "child neglect" when A.R. died, because he waited 15 minutes after A.R. stopped breathing to call 911. Doc. 3, at 11-

42

12; *see also* Okla. Stat. tit. 21, § 843.5(A), (C) (establishing that "child neglect" is a felony in Oklahoma).

Felony "child neglect" occurs when a defendant:

    (1)    willfully or maliciously,

    (2)    fails to provide,

    (3)    adequate medical care.

*See* OUJI-CR 4-37. As discussed above in § V.A.2., some evidence indicated that that Petitioner delayed calling for help, but other evidence suggested that during those 15 minutes, Petitioner was attempting to give A.R. live-saving CPR. Thus, the undersigned finds it unlikely that the jury would have found that Petitioner's failure to immediately call 911 was "willful" or "malicious." Moreover, there was *no* evidence proving that "child neglect," i.e., Petitioner's delayed call for help, *caused* A.R.'s death. Instead, the evidence was sufficient to establish that the child died because Petitioner inflicted injuries sufficient to cause significant brain trauma.

In sum, the OCCA concluded that Oklahoma law did not warrant a lesser-included offense instruction for second-degree felony murder. To that end, the OCCA reasonably concluded that trial counsel was therefore not ineffective for failing to request the instruction. *See Spears v. Mullin*, 343

F.3d 1215, 1250-51 (10th Cir. 2003) (agreeing that the OCCA reasonably rejected a claim of ineffective assistance of trial counsel based on a failure to request lesser- included offense instructions where the evidence at trial would not have supported the giving of such instructions).

### b. Second-degree felony murder based on misdemeanor omission to provide for a child.

The OCCA also rejected Petitioner's suggestion that he was entitled to an instruction on second-degree felony murder based on an underlying misdemeanor. As the appellate court noted, second-degree felony murder requires proof of an underlying *felony*. *See* Okla. Stat. tit. 21, § 701.8(2). Thus as the OCCA explained, Petitioner could not have been entitled to an instruction on second-degree felony murder with an underlying crime of *misdemeanor* omission to provide for a child. Doc. 15, Ex. 3, at 7. For that simple reason, the undersigned finds that the OCCA's conclusion that trial counsel's failure to request such an instruction was not constitutionally deficient was a reasonable *Strickland* application.

### c. Misdemeanor manslaughter with the underlying misdemeanor of omission to provide for a child.

Finally, the undersigned finds that the OCCA reasonably rejected Petitioner's claim that trial counsel should have requested an instruction on

44

misdemeanor manslaughter based on the misdemeanor of omitting to provide for a child. As its name implies, misdemeanor manslaughter applies when the commission of a misdemeanor causes a death. *See* Okla. Stat. tit. 21, § 711(1); OUJI-CR 4-94. In Oklahoma, it is a misdemeanor to a person to "willfully omit" to furnish "medical attendance" for a child in that person's care. Okla. Stat. tit. 21, § 852(A); OUJI-CR 4-40A.

Again, the OCCA reasonably concluded that Petitioner's trial court would have rejected an instruction on misdemeanor manslaughter. As discussed above, there was simply no evidence suggesting that Petitioner's alleged willful omission of medical attendance caused A.R.'s death, and in turn, there was substantial evidence that Petitioner inflicted blunt force trauma to A.R.'s head which led to the child's death. Accordingly, even if trial counsel had requested the instruction, the trial court could not have found that "evidence might allow a jury to acquit [Petitioner] of the greater offense and convict him of the lesser." *See Williams*, 22 P.3d at 711. Consequently, the OCCA reasonably applied *Strickland* when it found that trial counsel's failure to request the lesser-included instructions was not constitutionally deficient. *See Spears*, 343 F.3d at 1250-51.

### 7.    Summary.

Under AEDPA's double deference, the OCCA's conclusion that trial counsel's conduct was not constitutionally ineffective was not an unreasonable *Strickland* application. Consequently, the undersigned recommends that the petition be denied on this ground.

### G.    Petitioner's challenge to Oklahoma's child abuse murder statute.

The OCCA has previously interpreted Oklahoma's "child abuse murder" statute (Okla. Stat. tit. 21 § 701.7(C)) as a "general intent" crime, thus not requiring a specific intent to injure. *See Warner v. State*, 144 P.3d 838, 870-71 (Okla. Crim. App. 2006). Petitioner seeks habeas relief on grounds that this interpretation violates due process under the U.S. Constitution. Doc. 1, at 8; Doc. 3, at 26-27. The undersigned disagrees.

The Tenth Circuit has rejected this precise argument, noting that in Oklahoma, "child abuse murder" is analogous to "felony murder," which itself is a general intent statute. *Hernandez v. Addison*, 217 F. App'x 817, 819 (10th Cir. 2007); *see also Gilson v. Sirmons*, 520 F.3d 1196, 1210 (10th Cir. 2008) (addressing the need for a unanimous verdict: "We find the child abuse felony murder statute should be interpreted in the same manner as [felony murder]"). The circuit also held that Oklahoma's "child abuse murder"

46

statute "provides fair warning of the conduct and mental state require[d]," thus defeating a due process challenge. *Hernandez*, 217 F. App'x at 819. Accordingly, the undersigned recommends that the Court deny federal habeas relief on this issue.

### H. Cumulative error.

In Petitioner's final argument, he asks the Court to consider the aggregation of any errors to determine whether these rendered his trial unfair. Doc. 3, at 17. 28. The OCCA rejected the claim, finding that "the accumulation of error in Phillips's trial does not require relief." Doc. 15, Ex. 3, at 6 & n.18.

### 1. Clearly established law.

As noted above in § V.B.2.a., the Tenth Circuit has held that while a split in the circuit exists regarding whether the Supreme Court has clearly established a defendant's right to be free from cumulative error, this circuit typically engages in such an analysis. *See Hooks*, 689 F.3d at 1194, n.24; *see also Grant*, ___ F.3d ___, 2013 WL 4105939, at *15 (addressing cumulative error claim where petitioner presented only a "perfunctory assertion"). Again, for purposes of federal habeas relief, the Court asks only whether two or more constitutional errors combined to fatally infect the trial. *See Littlejohn*, 704

F.3d at 868; *see also Ochoa*, 669 F.3d at 1146. However, under such review, the Court also considers the impact of any constitutional claims that "have been individually denied for insufficient prejudice." *Cargle v. Mullin*, 317 F.3d 1196, 1207 (10th Cir. 2003) (holding that because a claim involving a "substantive prejudice components essentially duplicate the function of harmless-error review," "such claims should be included in the cumulative-error calculus if they have been individually denied for insufficient prejudice").

## 2.   Cumulative error analysis.

Under such standard, the undersigned considers the cumulative impact of:

(1)    the Confrontation Clause violation;

(2)    trial counsel's failure to object to the admission of the hearsay/Confrontation Clause testimony;

(3)    the prosecutor's comments regarding "truth and justice"; and,

(4)    the admission of the photographs of the victim's scar and post-mortem brain.

Even in the aggregate, these errors did not render Petitioner's trial fundamentally unfair.

Any rational trier of fact could have found beyond a reasonable doubt that Petitioner used unreasonable force against A.R., causing the child's

48

death. Further, Petitioner and another witness both corroborated the relevant hearsay testimony and that testimony was used to Petitioner's advantage. The prosecutor's brief comment was not directed to any key facts or issues in the case, and the photographs, while irrelevant, did not make the jury more likely to believe that Petitioner was the individual that inflicted the fatal injury. For these reasons, the undersigned finds that the OCCA could reasonably decide that cumulative error did not render Petitioner's trial fundamentally unfair.

## VI.    Recommended ruling.

For the reasons discussed above, the undersigned recommends denying the petition for habeas relief.

## VII.   Notice of right to object.

Petitioner can object to this report and recommendation. To do so, he must file an objection with the Clerk of this Court by September 19, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Petitioner is further advised that failure to timely object to this report and recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the undersigned Magistrate Judge in this matter.

Entered this 30th day of August, 2013.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE